INDIANA UNIVERSITY *v.* IEVA HARTWELL AND THE BLOOMINGTON HUMAN RIGHTS COMMISSION

[No. 1-476A56. Filed September 26, 1977. Rehearing denied November 2, 1977. Transfer denied May 25, 1978.]

*Alvin R. York*, Office of University Counsel, of Bloomington, for appellant.

*Bruce Wackowski*, Bloomington Human Rights Commission, *Robert D. Lange*, Indiana Civil Rights Commission for amicus curiae.

ROBERTSON, C.J.—This is an appeal by plaintiff-appellant, Indiana University (IU), from a judgment of the Monroe Circuit Court entered pursuant to IU's verified petition for review of an opinion and order of the Human Rights Commission of the City of Bloomington. From that same judgment, Ieva Hartwell (Hartwell) and the Bloomington Human Rights Commission (Commission), defendants-appellees bring a cross-appeal.

The facts and events pertinent to the disposition of this appeal follow. Hartwell was employed as a Senior Information Scientist at IU's Aerospace Research Applications Center (ARAC) from June 1, 1971, until sometime in May of 1973, when she terminated her employment. Her salary at the time of her departure was $13,100 per year. On June 5, 1973, Mr. Thor Semler (Semler) began employment at ARAC with the title of Director of Technical Services and at a salary of $17,750.

On August 3, 1973, Hartwell filed a complaint before the Commission alleging that IU had, in violation of the Bloomington Human Rights Ordinance, denied her an equal employment opportunity because of her sex. Specifically, she contended that Semler's duties were essentially equivalent to the duties that had been hers and that a comparison of Semler's salary and her former salary was *prima facie* evidence that the salary she had received was discriminatory.

The Commission found probable cause to pursue the complaint and, upon the conclusion of hearings on the matter, issued a thirty page "opinion and order" which concluded that IU had discriminated against Hartwell by underpaying her because of her sex and which ordered IU to pay Hartwell $4,490.00 as back

pay, plus an additional contribution to an employee benefit plan. Further, IU was ordered to create job descriptions to be submitted to employees for critical comments and was ordered to post signs to inform employees of the availability and coverage of the Indiana Civil Rights Commission and the Bloomington Human Rights Commission.

IU thereafter filed a verified petition for review in the Monroe Circuit Court seeking to have the administrative order set aside. The court vacated the Commission's awards of money damages as acts in excess of the Commission's authority but affirmed the remainder of the Commission's opinion and order.

IU appeals, alleging that Indiana University is an arm or alter ego of the State of Indiana and that the Human Rights Ordinance of the City of Bloomington is therefore not applicable to it and alleging also that the Monroe Circuit Court erred in not finding that the Commission's findings were arbitrary and capricious. Hartwell and the Commission cross-appeal, alleging that the court erred in finding that the Commission had no statutory authority to award money damages.

We will consider first IU's allegations regarding arbitrary and capricious findings by the Commission. The Commission's opinion and order is a morass. We cannot determine with any certainty, nor do we comprehend how the initial court of review determined, what constitutes the basis of the Commission's decision.

The Commission's narrative opinion and order presents conclusory findings that IU "has violated Chapter 2.60 of the Municipal Code by denying complainant an equal opportunity in employment because of her sex" and that Hartwell "was being under paid, because of her sex, from May of 1972 until May of 1973, by the amount of $4,490.00 by respondent Indiana University." However, there exists within the opinion and order a dearth of specific, evidentiary findings of fact upon which the conclusory findings could be premised.

The opinion and order is burdened with considerable hearsay and much that is not material or is not relevant to the issue

before the Commission--the question of discrimination by IU against Hartwell.[1]

For example, we note that the opinion and order dwells at length upon a comparison of Hartwell's and Semler's roles at ARAC. The Commission determined that the jobs of Hartwell and Semler were not significantly different, but the opinion and order does not state unequivocally that such comparison is the basis for the finding of discrimination. IU has alleged that the above determination was arbitrary, capricious, and an abuse of discretion; the initial court of review found that it was not.

It matters not, it seems to us, whether the Commission's determination regarding the similarity of Hartwell's and Semler's position was arbitrary and capricious. That point is extraneous to the issue of discrimination against Hartwell. The Commission found that Hartwell "was being under paid, because of her sex, from May of 1972 until May of 1973, by the amount of $4,490.00 by respondent Indiana University." The record discloses that Semler's employment with ARAC did not commence until June of 1973--after the end of the period of discrimination as found by the Commission. Clearly, Semler's employment and its incidents could have no probative value to support the finding of discrimination where that discrimination had already concluded. That is, if there was discrimination from May of 1972 until May of 1973, it would have existed irrespective of Semler's subsequent employment. Indeed, the discrimination should be demonstrable even if the position occupied by Hartwell simply expired upon her departure, with no one being hired later to perform any of those duties that had been hers.

The Commission's determination of the similarity of Hartwell's and Semler's employment positions is not material to the issue of discrimination and could not properly be used as the basis for the Commission's decision. Thus, even if it

---

1. We hasten to add that an administrative agency decision will not be set aside for the admission of incompetent or immaterial evidence if there is substantial evidence to support the agency's decision. *L.S. Ayres & Co. v. Indianapolis Power & Light Co.* (1976), 169 Ind. App. 653, 351 N.E.2d 814.

were arbitrary and capricious, necessarily, IU could not have been harmed thereby. Although we *suspect* the above determination *was* the basis for the Commission's decision, the fact remains that we do not *know* how the Commission reached its decision. Judge Sullivan, in *V.I.P. Limousine Service, Inc. v. Herider-Sinders, Inc.* (1976), 171 Ind. App. 109, 355 N.E.2d 441, has stated well our need for additional information.

> "In certain instances to say that findings of basic fact are required is not enough . . . . A mere recitation of the factors considered and found as fact may do no more to facilitate judicial review than a finding of the ultimate fact. It is thus appropriate to say that we need not only findings of basic facts but we must know how and why and to what purpose the administrative agency utilized those facts in reaching its ultimate conclusion. A rational relationship between the facts found and the conclusion reached must exist and should be stated. We need then, in addition to the findings of fact, a statement of the reasons for the agency's ultimate determination. . . ."

To facilitate an informed judicial review, we would remand and instruct the Commission to make clear, specific findings of fact and to state how they were applied. However, the questions of jurisdiction and of the authority of the Commission to award damages and our resolution of them render unnecessary such a remand.

On cross-appeal, Hartwell, the Commission, and amicus curiae, Indiana Civil Rights Commission, contend that the Commission has the authority, pursuant to IC 1971, 22-9-1-12, (Burns Code Ed., Supp. 1976), to award damages. Notwithstanding contrary views expressed by the court of initial review in its findings and by the Attorney General of Indiana at 10 Op. Att'y Gen. 30 (1974), we agree with the statutory interpretation of the cross-appellants.

While the statute does not specifically state that local commissions may be vested by ordinance with the authority to award damages, cross-appellants cogently argue that such authority is impliedly contained in the following language of the statute:

> ". . . An ordinance enacted as provided in this section *may impose penalties or grant such powers to* the local commission

agency *as may be deemed necessary or appropriate* to implement its purpose and objective, *whether or not such powers are granted to the State Commission under IC 1971, 22-9-1-2, including but not limited to . . . ."* (Emphasis added.)

The above language of the statute certainly is broad enough to include the award of damages. Indeed, the languge is so liberal, we cannot say with certainty that the statute places *any* limitations on the powers which may be granted to the Commission. We are thus constrained to the view that IC 1971, 22-9-1-12, (Burns Code Ed., Supp. 1976) is violative of Indiana Const. Art. 3, § 1[2]; Art. 4, § 1[3]; Art. 5, § 1[4]; and Art. 7, § 1[5].

The various powers reposed in the Government of the State of Indiana by its citizens were purposely distributed to the three separate departments. It is well established, though, that administrative agencies, as part of the executive branch, may have conferred upon them by statute certain legislative functions and quasi-judicial power--this, without doing violence to the Indiana Constitution. *Warren v. Indiana Telephone Co.* (1940), 217 Ind. 93, 26 N.E.2d 399; *State ex rel. Standard Oil Co. v. Review Bd.* (1951), 230 Ind. 1, 101 N.E.2d 60.

The statutory languge under scrutiny here goes beyond the mere improper delegation of legislative authority as was found in *State ex rel. Standard Oil Co. v. Review Bd., supra* and *Schakel v. Review Bd. of Indiana Employment Sec. Division* (1968), 142 Ind.

---

2. "The powers of the government are divided into three separate departments; the Legislative, the Executive including the Administrative, and the Judicial: and no person, charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided."

3. "The Legislative authority of the State shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives. The style of every law shall be: 'Be it enacted by the General Assembly of the State of Indiana'; and no law shall be enacted, except by bill."

4. "The executive power of the State shall be vested in a Governor. He shall hold his office during four years, and shall not be eligible more than eight years in any period of twelve years."

5. "Judicial Power. The judicial power of the State shall be vested in one Supreme Court, one Court of Appeals, Circuit Courts, and such other courts as the General Assembly may establish."

App. 475, 235 N.E.2d 497. The ordinary, natural sense of the aforementioned emphasized wording of IC 1971, 22-9-1-12 (Burns Code Ed., Supp. 1976), especially when read in consonance with IC 1971, 22-9-1-2(e), (Burns Code Ed., Supp. 1976),[6] leads us inescapably to the conclusion that the legislature has, unwittingly or not, arrayed the full panorama of powers of the State and has given any city, town, or county uncontrolled discretion to select in smorgasbord fashion those powers "deemed necessary and appropriate" to implement the purpose and objective of the Civil Rights Act and to vest a local commission agency with such selected powers.

IU argues that it, as an arm or alter ego of the State, is not subject to the jurisdiction of the Commission. The reply to that argument is also to be found in IC 1971, 22-9-1-12, (Burns Code Ed., Supp. 1976). That section authories a city, town, or county to enact an ordinance or ordinances to effectuate "within its territorial jurisdiction" public policy of the State, and, as we harken back to the grant of powers language discussed above, we perceive nothing in the statute to preclude state government[7] as it exists within such a territorial jurisdiction from being subjected to the jurisdiction of a local commission agency. Thus, statutorily at least, the Common Council of the City of Bloomington could, as it did, legitimately give the Commission jurisdiction over the State as it exists within the City of Bloomington.

Although our determination that, under the statute, the State could be subjected to the jurisdiction of the Commission is not necessarily crucial to our disposition of this appeal, it does, when viewed in conjunction with other previously discussed language of the statute, assist in demonstrating the latent dangers associated with a statutory grant of unrestrained authority. To hypothesize, let us suppose that the Indianapolis Human Rights Commission should be similarly endowed of jurisdiction over the State. As Indianapolis is the seat of state government, in theory,

---

6. "IC 1971, 22-9-1 [22-9-1-1 — 22-9-1-12] shall be construed broadly to effectuate it purpose."

7. We need not and do not here decide whether IU is the State of Indiana.

the Governor, the General Assembly, and the Supreme Court of Indiana would all be subjected to the jurisdiction of the Indianapolis commission. Patently, this prospect of the State's highest elective officials being subject to the dictates of a local appointive agency is perverse to the theme of our Indiana Constitution. Yet, such a scenario appears, in and of itself, not to be incongruous with the language of the statute.

It has been said, "A statute or ordinance which in effect reposes an absolute, unregulated, and undefined discretion in an administrative agency bestows arbitrary powers and is an unlawful delegation of legislative powers." 1 Am.Jur.2d *Administrative Law* § 108 (1962). In *Matthews v. State* (1958), 237 Ind. 677, 148 N.E.2d 334, the Indiana Supreme Court stated, "Reasonable standards must be imposed where the Legislature delegates discretionary powers to an administrative officer." The Court then qualified that statement: "However, the policy of the Legislature and the standards to guide the administrative agency may be laid down in very broad and general terms. Such terms get precision from the knowledge and experience of men whose duty it is to administer the statutes, and then such statutes become reasonably certain guides in carrying out the will and intent of the Legislature."

It is our observation that the function of local commission agencies under the Civil Rights Act is to promote and provide essentially equitable solutions in response to complaints of violations of a broad range of civil (or human) rights. Not to demean the ability or the dedication of those who serve with these agencies, we do not think the exercise of such a function constitutes the specialized expertise or knowledge contemplated by the *Matthews* court as an acceptable substitute for the imposition of express standards where there is a delegation of discretionary powers.

To reiterate, because the statute contains no standards to guide a city, town, or county in the exercise of its discretion to select powers, it is possible that a city, town, or county could confer upon a local commission agency full executive, legislative,

and/or judicial powers. The improbability that a political subdivision might actually confer upon a local commission agency a power that that agency may not constitutionally possess is of no moment. So long as there exists residual statutory authority to usurp powers constitutionally reserved to the three departments of the State, the statute is constitutionally defective.

To declare a statute unconstitutional is not a matter to be lightly undertaken, the more so when the result is to deny the valid existence of important, useful agencies created thereunder. Be that as it may, after measuring IC 1971, 22-9-1-12 (Burns Code Ed., Supp. 1976) by various rules of statutory construction, we have concluded that the statute is salvageable only if we ignore the plain meaning of its words and somehow find within the statute some implicit limitation on the powers available to be conferred upon local commission agencies. We decline to engage in this practice of judicial fiat.

Though the nobility of the objectives of the statute cannot be doubted, purity of purpose can never be an adequate alternative to constitutional safeguards. Accordingly, we declare IC 1971, 22-9-1-12, (Burns Code Ed., Supp. 1976) unconstitutional for the reasons previously stated, and we hold that the opinion and order of the Human Rights Commission of the City of Bloomington in this cause is null, void, and of no effect as there exists no legitimate statutory authority for the establishment of local commission agencies.

Remanded to the initial court of review for any further action not inconsistent with this opinion.

Lowdermilk and Lybrook, JJ., concur.

NOTE—Reported at 367 N.E.2d 1090.