**KIMBLE DIVISION OF OWENS–ILLINOIS, INC., Appellant (Defendant Below),**

v.

**Linda A. BUSZ, Appellee (Plaintiff Below),**

and

**The Indiana Civil Rights Commission, Appellee (Defendant Below).**

**No. 4–482A88.**

Court of Appeals of Indiana, First District.

May 31, 1983.

Rehearing Denied July 5, 1983.

George J. Zazas, Marcus B. Chandler, Barnes & Thornburg, Indianapolis, for appellant.

Michael E. Armey, Rasor, Harris, Lemon & Reed, Warsaw, for appellees.

ROBERTSON, Presiding Judge.

The appellant-defendant, Kimble Division of Owens-Illinois, Inc. (Kimble), appeals the trial court's decision ordering the Indiana Civil Rights Commission (ICRC) to conduct a full hearing on a discrimination complaint which was filed against Kimble by a former employee, Linda A. Busz (Busz).

We reverse the trial court's decision and remand the case for further action.

Busz's complaint alleged that she was discharged from her job because of her handicap, epilepsy. Through its staff, the ICRC investigated Busz's complaint pursuant to 910 IAC 1–3–2.[1] The Director found no probable cause to support the belief that Kimble had discriminated against Busz. In

---

1. 910 IAC 1–3–2 Investigation and finding
Sec. 2. Investigation and Finding.
(A) Investigation of Complaint. If the Respondent chooses to defend against the Complaint, pursuant to Sec. 2.7(A) [910 IAC 1–2–7(A)], the Director shall initiate a full investigation of the Complaint. Based on the results of the investigation, the Director shall determine whether Probable Cause exists to believe that an illegal act of discrimination did occur in violation of the Indiana Civil Rights Law, Ind.

Stat.Ann. §§ 40–2307—40–2317(a) [IC 22–9–1] [Burns Supp.1972].
(B) Finding of Probable Cause. If the Director finds Probable Cause to believe that an illegal act of discrimination did occur, or if Probable Cause should be found by the Commission pursuant to an appeal under Sec. 3.2(d) [subsection (D) of this section], the Director shall cause a Consent Agreement to be drawn up and sent to the Respondent by certified or registered mail. Upon receipt of the Consent

part, his evaluation noted that Busz had excessive absences and was properly subject to dismissal. Busz appealed the finding of no probable cause pursuant to 910 IAC 1–3–2(D). The Commissioner reviewing the case upheld the finding of no probable cause and dismissed Busz's complaint.

Busz filed a petition for judicial review alleging that the ICRC failed to comply with the Indiana Civil Rights Law, Ind. Code 22–9–1–1 *et seq.*, the Administrative Adjudication Act, Ind.Code 4–22–1–1 *et seq.* (AAA), and alleging that ICRC's decision was unsupported by substantial evidence.

Initially, the trial court held that the AAA did not apply to the ICRC's probable cause determination because it had not ripened into an "Administrative Adjudication" as defined by I.C. 4–22–1–2.[2] It also held that the ICRC had legally adopted 910 IAC 1–3–2 pursuant to I.C. 22–9–1–11 which refers to the ICRC's power "to investigate such complaints as it deems meritorious . . . ." After noting that Busz had alternative private civil remedies, the trial court dismissed her petition for judicial review.

Busz's motion to correct errors alleged the trial court had erred by failing to apply

Agreement, the Respondent shall have the following options:

(1) The Respondent may sign the Consent Agreement as written and return it to the Commission, or;

(2) The Respondent may request within five (5) days after receiving the Consent Agreement that a Conciliation Conference be scheduled to negotiate differences regarding provisions in the Consent Agreement, or;

(3) The Respondent may ignore all conciliation efforts. In this case the Director shall cause a public hearing date to be set at the Commission's earliest convenience.

(C) Finding of No Probable Cause. If the Director finds No Probable Cause to believe that an illegal act of discrimination did occur, notice of such finding shall be sent to the Complainant and the Respondent by registered or certified mail, return receipt requested.

(D) Appeal Of A No Probable Cause Finding. A party who believes himself to be aggrieved by a finding of No Probable Cause may file, within fifteen (15) days after receipt of notice of such finding, a written request for reconsideration of such finding with the Commission. Notice of such right to request reconsideration shall be contained in the notice of the finding of No Probable Cause provided for by Sec. 3.2(C) [subsection (C) of this section]. The Chairman of the Commission shall appoint a Commissioner to review and rule on such request. The Director shall schedule a meeting to be attended by the appointed Commissioner and the Complainant. The Commissioner shall base his decision on the investigation results submitted to him by the Director and the Complainant's arguments presented to him at the meeting:

(a) If the Commissioner determines that the finding of No Probable Cause should be reversed, the case shall be processed as though an original finding of Probable Cause had been made;

(b) If the Commissioner determines that the original finding of No Probable Cause should

be upheld the Complaint shall be dismissed and the Complainant and the Respondent shall be sent notice of such finding by registered or certified mail with return receipt requested.

The Commissioner who reverses a No Probable Cause finding shall take no further part in the proceedings on the Complaint which was the subject of the appeal. Provided, however, that if such Commissioner's disqualification would deprive the Commission of a quorum, the Commissioner who ruled on the appeal need not be disqualified. (Indiana Civil Rights Commission; Rule 3, Sec. 3.2; filed Mar. 29, 1974, 4:16 p.m.: Rules and Regs.1975, p. 201)

2. The relevant part of section 2 states:

Administrative adjudication means the administrative investigation, hearing and determination of any agency of issues or cases applicable to particular persons, excluding, however, the adoption of rules and regulations; the issuance of warrants or jeopardy warrants for the collection of taxes or employment security contributions; the payment of benefits by the employment security division; the review by the state board of tax commissioners of budgets, appropriations, tax levies and bond issues; determination of eligibility and need for public assistance under the welfare laws; mathematical calculations for the purpose of classification of townships by the state board of accounts; orders and prescribed procedure relating to the administration or supervision of the administration of public assistance under the welfare laws; determinations which affect only other agencies; determinations by the Indiana alcoholic beverage commission other than determinations to which this act is specifically made applicable by any other law; and the dismissal or discharge of an officer or employee by a superior officer, but including hearings on discharge or dismissal of an officer or employee for cause where the law authorizes or directs such hearing.

the AAA to ICRC's probable cause proceedings, by failing to decide whether the ICRC had complied with I.C. 22–9–1–6(k)(3) pertaining to dismissals of complaints, and by failing to decide whether substantial evidence supported ICRC's finding of no probable cause.

The trial court ruled on the motion and held that Busz was entitled to judicial review, but affirmed its original conclusion that the AAA did not apply to the probable cause determination because it was not an administrative adjudication. The court also held that the ICRC's findings were sufficient to satisfy I.C. 22–9–1–6(k)(3)[3]. However, the trial court found that it could not determine whether these findings were supported by sufficient evidence because the record was incomplete. Therefore, the trial court ordered the ICRC to prepare and submit to it a full and complete transcript, including documents, memorandum, and other factual material.

The ICRC responded, but found that the materials it had submitted were incomplete and sent additional documents. The trial court concluded that it was unable to determine what evidence the ICRC had relied on in reaching its decision. The trial court remanded Busz's claim to the ICRC instructing it to conduct a full evidentiary hearing pursuant to 910 IAC 1–11 and I.C. 22–9–1–6(k)(1).

Kimble raises several issues on appeal, but we will only address its first issue: whether the ICRC's finding of no probable cause is subject to judicial review. Kimble argues the trial court lacked jurisdiction because the ICRC's finding was an unreviewable exercise of prosecutorial discretion—discretion authorized by the Indiana Civil Rights Law. Busz raises a related issue, arguing that although the trial court reviewed her petition, it nevertheless erred by failing to apply the AAA.

We agree with Busz's argument. The trial court had the authority to review Busz's petition because the AAA is specifically applicable to the ICRC. By deciding that the AAA was not applicable, the trial court prematurely examined the evidentiary basis underlying the ICRC's determination and failed to address multiple issues which Busz raised in her petition concerning whether the ICRC's actions were contrary to the AAA.

Section 4(b) of the Indiana Civil Rights Law, I.C. 22–9–1–4(b) states that the ICRC is an "agency" as the term is used in the AAA. This section reads:

(b) It is expressly recognized that the commission is an "agency" within the meaning of the term as used in IC 1971, 4–22–1 [4–22–1–1—4–22–1–30] as the same may hereafter be amended.

In turn, "agency" as used in the AAA means and includes, "any officer, board, *commission,* department, division, bureau or committee of the state of Indiana", with specific exceptions which do not include the ICRC. I.C. 4–22–1–2 (emphasis added.)

The AAA at I.C. 4–22–1–14 provides that:

Any party or person aggrieved by any order or determination made by any such agency shall be entitled to a judicial review thereof in accordance with the provision of this act [4–22–1–1—4–22–1–30].

These concepts are reflected in the ICRC's regulations. 910 IAC 1–2–1 states:

Sec. 1. Scope and application of the Rules [910 IAC 1]. (A) Authority. These rules govern procedures in adjudicatory proceedings conducted before the Indiana Civil Rights Commission. Such proceedings are subject to the general provision of the State Administrative Adjudication and Court Review Act, Ind.Stat.Ann. §§ 63–3001—63–3030 [IC 4–22–1] [Burns 1961]. *Under the terms of that act, "administrative adjudication" means the ad-*

---

**3.** I.C. 22–9–1–6(k)(3) states:

If, upon all evidence, the commission shall find that a person has not engaged in any such unlawful practice or violation of IC 22–9–1 [22–9–1–1—22–9–1–13], the commission

shall state its findings of facts and shall issue and cause to be served on the complainant an order dismissing the complaint as to such person.

ministrative investigation, hearing and determination by an agency of issues or cases applicable to particular persons. Such proceedings are adversary proceedings wherein the rights of more than one party are to be adjudicated by the Indiana Civil Rights Commission. These rules are not applicable to a Commission proceeding which is not an administrative adjudication. Where the rules do apply, the Commission may not waive or otherwise modify them except to the extent specifically provided in the Indiana Civil Rights Law, Ind.Stat.Ann. §§ 40–2307–2317(a) [IC 22–9–1] [Burns Supp.1972]. (Emphasis added.)

The emphasized language in this regulation is virtually a direct quote from I.C. 4–22–1–2 defining "administrative adjudication", at n. 2 *infra,* and from I.C. 4–22–1–3 which specifies that all administrative adjudications, which are required by statute to be made and which involve determinations of personal rights and duties, shall be made in accordance with the AAA.

The crux of this case is whether the ICRC's finding of no probable cause was an administrative adjudication or an unreviewable exercise of the agency's statutory discretion.

Kimble relies on I.C. 22–9–1–11, as did the trial court, in arguing that the ICRC has discretion to pursue only complaints which it finds meritorious. I.C. 22–9–1–11 states:

Commission to receive complaints—Investigation—Recommendations for legislation. *In addition to its power to investigate the discriminatory practices referred to in this chapter,* the commission may receive written complaints of violation of the Indiana Civil Rights Law or other discriminatory practices based upon race, religion, color, sex, national origin or ancestry and to investigate such complaints as it deems meritorious, or to conduct such investigation in the absence of complaints whenever it deems it in the public interest. It may transmit to the legislature its recommendations for legislation designed to aid in the removing of such discrimination. (Emphasis added.)

Kimble has overlooked the introductory clause to this section which states that the authority it confers on the ICRC is in addition to powers conferred elsewhere in I.C. 22–9–1. The main section of chapter 1 which delineates the ICRC's authority is I.C. 22–9–1–6. In relevant part, it states:

22–9–1–6 Powers and duties.—The commission shall have the following powers and duties:

\* \* \* \* \* \*

(3) To receive and investigate complaints alleging discriminatory practices. The commission shall not hold hearings in the absence of a complaint. All investigations of complaints shall be conducted by staff members of the Indiana Civil Rights Commission or their agents.

Reading the Indiana Civil Rights Law as a whole, and giving the statutory language its plain and ordinary meaning, *Barr v. Sun Exploration Co., Inc.,* (1982) Ind.App., 436 N.E.2d 821, we find that the legislature intended for section 11 to supplement section 6. Taken in context and read in conjunction with the definitions for "complaint" and "complainant" in I.C. 22–9–1–3 [4], section 6 imposes a duty on the ICRC

---

**4.** I.C. 22–9–1–3 in relevant part states:

(n) The term "complainant" *means any individual charging on his own behalf to have been personally aggrieved by a discriminatory practice,* or the director or deputy director of the commission charging that a discriminatory practice was committed against a person, other than himself, or a class of people, in order to vindicate the public policy of the state of Indiana as defined in section 2 [22–9–1–2] of this chapter.

(o) The term "complaint" means any written grievance filed by a complainant with the commission. The original shall be signed and verified before a notary public or other person duly authorized by law to administer oaths and take acknowledgments. Notary service shall be furnished by the commission without charge. To be acceptable by the commission, a complaint shall be sufficiently complete so as to reflect properly the full name and address of the complainant; the name and address of the respondent against whom the complaint is made; the alleged discriminatory practice and a statement of particulars thereof; the date or dates and places of the alleged discriminatory practice,

to pursue individuals' complaints. The language in section 11 referring to "complaints as it deems meritorious" applies to the additional authority conferred in that section. This interpretation of the statute is also supported by the ICRC's regulation, 910 IAC 1–2–3(d), dealing with investigations in the absence of individual complaints as authorized by I.C. 22–9–1–11.

Additionally, in carrying out the duty imposed in section 6(e), the ICRC's probable cause determinations involve the investigation, the reception of evidence, and the resolution on the merits of individuals' complaints. There are adverse parties involved whose rights, duties, and obligations are determined. The ICRC's regulation defining "probable cause" indicates the commission is weighing the evidence before it in making a probable cause determination.

(Q) The term "Probable Cause" shall mean such an apparent state of facts *established* by personal knowledge or by information from others reasonably accepted as true, as would lead a person of normal intelligence and prudence to believe that a Discriminatory Practice prohibited by the Indiana Civil Rights Law [IC 22–9–1] has occurred. (Emphasis added.)

910 IAC 1–1–1(Q).

Therefore, a probable cause determination by the ICRC is an administrative adjudication, I.C. 4–22–1–2 at n. 2 *infra,* and because individual rights are being determined, the determination must be made in accordance with the AAA. I.C. 4–22–1–3.

The fact that the ICRC can order individual relief, including compensation for a complainant's pecuniary losses pursuant to I.C. 22–9–1–6(k)(1) *see e.g., Ind. Civil Rights Comm'n v. Holman,* (1978) Ind.App.,

177 Ind.App. 648, 380 N.E.2d 1281, also bears on Kimble's argument that unreviewable prosecutorial discretion is involved. A prosecutor's decision to pursue criminal charges is a function of his role as the state's representative. The prosecutor represents the general public's interest and does not redress an individual's losses. *See generally,* 63 Am.Jur.2d, *Prosecuting Attorneys* §§ 26 and 28 (1972). Individuals must pursue private civil action to redress their injuries caused by criminals. The Indiana Civil Rights Law at I.C. 22–9–1–6(e), gives the ICRC mixed powers to pursue the general public's interest and to redress individual grievances. Even if we were to accept Kimble's argument that the ICRC has discretion to pursue only meritorious complaints, the exercise of that discretion would still be subject to the AAA and judicial review because individuals' rights are being determined. The AAA does not contemplate determinations of individuals' rights which have not ripened into administrative adjudications.

The trial court's judgment is reversed and this case is remanded to the court below with instructions to address Busz's allegations that the ICRC failed to comply with the AAA.

RATLIFF and NEAL, JJ., concur.

---

and if the alleged discriminatory practice is of a continuing nature, the dates between which said continuing acts of discrimination are alleged to have occurred; and a statement as to any other action, civil or criminal, instituted in any other form based upon the same grievance as is alleged in the complaint, together with a statement as to the status or disposition of such other action. No complaint shall be valid unless filed within ninety [90] days from the date of the occurrence of the alleged discrimi-

natory practice, or from the date of the termination of a published and meaningful grievance procedure provided by a respondent employer, or labor union. Wherein complainant has been actively pursuing a complaint with any agency created pursuant to section 12.1 [22–9–1–12.1] of this chapter, the ninety [90] day limit shall commence upon notification to the complainant of the agency's final decision. (Emphasis added.)