Peggy J. NEISWINGER,
Plaintiff-Appellant,

v.

M.F. RENNER, State Examiner, State Board of Accounts, Linley E. Pearson, Attorney General of Indiana, Defendants-Appellees.

No. 1–385A71.

Court of Appeals of Indiana,
First District.

Mar. 6, 1986.

Joseph E. Trester, Spencer, for plaintiff-appellant.

Linley E. Pearson, Atty. Gen., Thomas D. Strodtman, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for defendants-appellees.

## STATEMENT OF THE CASE

RATLIFF, Judge.

Peggy Neiswinger appeals from a judgment dismissing her petition for judicial review under the Administrative Adjudication Act, Indiana Code section 4-22-1-1 *et seq.*, (AAA), of the action of the Indiana State Board of Accounts certifying the report of its audit of an auto license branch managed by her to the Indiana Attorney General. We affirm.

## FACTS

The parties have stipulated to the facts for purposes of this appeal. Neiswinger was the appointed manager of the State Bureau of Motor Vehicles License Branch # 136, located in Owen County, Indiana. As branch manager, she was responsible for properly accounting for the receipt and sale of all license plates sold within Owen County. It was also her duty to report and deposit proceeds from the sale of license plates with state and county officials.

In accordance with these duties, Neiswinger filed with the State Bureau of Motor Vehicles "Missing Plate Affidavits" for each of the years in question, 1981 and 1982. These affidavits were to be prepared and filed whenever the branch manager discovered the license plates evidently shipped by the State Bureau of Motor Vehicles were not received by the local license branch. Routine audits of the license branch were conducted by the Board for 1981 and 1982, apparently reconciling the accounts and accepting as accurate the "Missing Plate Affidavits" filed by Neiswinger.

In October 1983, Neiswinger received a letter from Hubert Hoffman, a field examiner for the Board, informing her that the license plates which Neiswinger had reported as missing had actually been sold. Hoffman requested that Neiswinger send to the appropriate state and county official the total amount of $24,392, representing proceeds from the sale of all plates listed on the "Missing Plate Affidavits". Neiswinger thereafter wrote several letters to the State Examiner, M.F. Renner, requesting that the Board explain why it questioned the credibility of the "Missing Plate Affidavits," and how it had calculated the sum allegedly owed by Neiswinger. In January 1984, Renner sent to Neiswinger a "Notice of Result of Examination" in which she was informed that she was "... indebted to the public treasury in the sum set out" and requesting "prompt settlement". Further, she was invited to make any explanation, either in writing or in person,

before January 19, 1984. After that date, Renner explained that the report would be filed as a public document and be subject to certification to the Attorney General for collection.

In a responding letter to Renner, Neiswinger requested a meeting with the Board to discuss the basis for the Board's conclusion that the plates listed in the "Missing Plate Affidavits" had been sold.[1] At a March 1, 1984, meeting of Neiswinger, her counsel, Renner, Hoffman and another examiner, Neiswinger was given additional time in which to account for the proceeds of plates she had listed as missing. However, no testimony was taken at this meeting, nor was there any record of proceedings produced as a result of the meeting.

On March 8, 1984, the State Board of Accounts certified to the Attorney General for collection the results of the audit it had conducted of the accounts of license branch # 136, alleging the discrepancy totalling $24,392. On March 13, 1984, Neiswinger filed her "Petition for Review" alleging in part that the certified audit constituted a final order of the Board and was made without the procedures prescribed under the Administrative Adjudication Act. The trial judge granted the Board's Motion to Dismiss, finding that Neiswinger's petition failed to state a claim upon which relief could be granted. Neiswinger perfected this appeal.

### ISSUE

Although Neiswinger raises five issues in her appeal, all of such issues are subsumed in the following issue:

Does the action of the State Board of Accounts or State Examiner in certifying the results of its audit of an auto license branch to the Attorney General for appropriate civil action constitute an "administrative adjudication" under the Administrative Adjudication Act, and is such action subject to judicial review under the Act?

### DISCUSSION AND DECISION

The action of the State Board of Accounts in certifying the results of its audit to the Attorney General for collection was not subject to the Administrative Adjudication Act (AAA). Such action did not constitute an administrative adjudication. Hence, there is no right to judicial review pursuant to the AAA. The trial court properly dismissed the petition for review.

▪ The state examiner is required by statute, Indiana Code section 5–11–1–9, to examine all accounts and financial affairs of every public office and institution. Auto license branches are subject to audit by the state. If such examination discloses malfeasance, misfeasance or nonfeasance in an office or on the part of any officer or employee, the state examiner must verify a copy of the report of his examination and certify it to the attorney general for such civil proceedings as may be required. Indiana Code section 5–11–5–1; *State v. Rankin* (1973), 260 Ind. 228, 294 N.E.2d 604. In all cases where the report filed with the attorney general discloses a criminal offense, the state examiner shall present a certified copy of the report, together with competent testimony supporting the charge, to the county grand jury. Indiana Code section 5–11–6–4.

▪ In making the examination, the state examiner, or his deputies, are entitled to free access to such offices, and may examine all books, records, papers, accounts, cash and cash drawers, and may subpoena witnesses to appear and produce books and records, and may examine such witnesses under oath, either orally or by interrogatories. Ind.Code sec. 5–11–1–9. Nevertheless, the examination does not constitute an administrative adjudication and is not subject to the AAA.

The intent of the AAA is "to establish a uniform method of administrative adjudication by all agencies of the state of Indiana,

---

1. The Board's assessment against Neiswinger represents sales of plates in 1981 and 1982, less revenue from sold plates which Neiswinger found stored in a safe and which she remitted upon its discovery on June 8, 1983.

to provide for due notice and an opportunity to be heard and present evidence before such agency and to establish a uniform method of court review of all such administrative adjudication." Indiana Code section 4–22–1–1. The key words are "administrative adjudication." The act further defines "administrative adjudication" as

"[T]he administrative investigation, hearing, and determination of any agency of issues or cases applicable to particular persons, excluding, however, the adoption of rules and regulations; the issuance of warrants or jeopardy warrants for the collection of taxes or employment security contributions; the payment of benefits by the employment security division; the review by the state board of tax commissioners of budgets, appropriations, tax levies, and bond issues; determination of eligibility and need for public assistance under the welfare laws; determinations of probable cause and no probable cause and fact finding conferences by the state civil rights commission; mathematical calculations for the purpose of classification of townships by the state board of accounts; orders and prescribed procedure relating to the administration or supervision of the administration of public assistance under the welfare laws; determinations which affect only other agencies; determinations by the Indiana alcoholic beverage commission other than determinations to which this chapter is specifically made applicable by any other law; and the dismissal or discharge of an officer or employee by a superior officer, but including hearings on discharge or dismissal of an officer or employee for cause where the law authorizes or directs such hearing."

Ind.Code sec. 4–22–1–2.

The Administrative Adjudication Act further provides:

"I.C. 4–22–1–3. Determination of rights, duties, obligations, privileges or other legal relations by agencies.—In every administrative adjudication in which the rights, duties, obligations, privileges, or other legal relations of any person are required or authorized by statute to be determined by any agency, the same shall be made in accordance with this chapter and not otherwise."

Neiswinger argues that because the State Board of Accounts and the state examiner are public agencies within the statutory definition included in the act,[2] the examination and report to the attorney general were subject to the AAA and, therefore, subject to judicial review under the provisions of the AAA relevant to such review. Whether or not the State Board of Accounts, or the state examiner, constitute an "agency" is not the issue. The issue is whether or not there was an "adjudication." Clearly there was not. No rights, duties, obligations, privileges, or other legal relations of any person were determined by the report. The "agency" here had no power or authority to effect any remedy. The "agency" merely submitted a report of its investigation detailing its contentions of misconduct to the attorney general for appropriate civil action. Any adjudication of rights, duties, obligations, privileges, or other legal obligations will take place within whatever civil action is brought in the courts by the attorney general. Neiswinger will have her day in court at that time, including all appellate rights available to any litigant.

In *Kimble Division of Owens-Illinois, Inc. v. Busz* (1983), Ind.App., 449 N.E.2d 618, *trans. denied*, we held a probable cause determination by the Indiana Civil

2. Indiana Code section 4–22–1–2 provides:
   "The word 'agency' whenever used in this chapter shall mean and include any officer, board, commission, department, division, bureau, or committee of the state of Indiana other than courts, the governor, military officers or military boards of the state, state colleges or universities supported in whole or part by state funds, benevolent, reformatory or penal institutions, the industrial board, state board of tax commissioners, and the public service commission of Indiana. However, this chapter does not apply to, control, nor affect the Indiana department of state revenue or any division, department, or agency thereunder, with the exception of the division of private employment agencies."

Rights Commission was an "administrative adjudication" under the AAA.[3] We pointed out, however, in *Kimble:*

"Additionally, in carrying out the duty imposed in section 6(e), the ICRC's *probable cause determinations involve the investigation, the reception of evidence, and the resolution on the merits of individuals' complaints.* There are adverse parties involved whose rights, duties, and obligations are determined. The ICRC's regulation defining 'probable cause' indicates the commission is weighing the evidence before it in making a probable cause determination.

'(Q) The term "Probable Cause" shall mean such an apparent state of facts *established* by personal knowledge or by information from others reasonably accepted as true, as would lead a person of normal intelligence and prudence to believe that a Discriminatory Practice prohibited by the Indiana Civil Rights Law [IC 22–9–1] has occurred. (Emphasis added.)'

"910 IAC 1–1–1(Q).

"Therefore, a probable cause determination by the ICRC is an administrative adjudication, I.C. 4–22–1–2 at n. 2 *infra*, and because individual rights are being determined, the determination must be made in accordance with the AAA. I.C. 4–22–1–3. (Emphasis added.)"

449 N.E.2d at 622.

It is clear that our decision in *Kimble* was predicated upon the civil rights commission's hearing of evidence and their resolution on the merits of complaints. We also noted that the Indiana Civil Rights Commission can order individual relief, including compensation for a complainant's pecuniary loss pursuant to Indiana Code section 22–9–1–6(k)(1). *Kimble*, 449 N.E.2d at 622. This is in stark contrast to the state examiner's duties in this case. No resolution of the merits of the case and no individual relief were made, nor could such have been done by the examiner. The ex-aminer simply investigated the license branch, discovered what he believed to be misconduct, and reported it to the attorney general for appropriate civil action. The examiner's report was simply that—a report—and no more. There was no adjudication within the meaning of the AAA, and thus no right to judicial review.

The trial court's dismissal of the petition was proper. The judgment should be affirmed.

NEAL, J., concurs.

ROBERTSON, P.J., concurs in result.

**3.** Since our holding in *Kimble,* Ind.Code sec. 4–22–1–2 was amended effective February 29, 1984, to eliminate civil rights commission prob-able cause determinations from within the purview of the statutory definition of "administrative adjudication."