**TAYLOR DRUG STORES, INC.,**
Petitioner-Appellant,

v.

**INDIANA ALCOHOLIC BEVERAGE
COMMISSION, et al.,**
Respondent-Appellee.

No. 41A01–8601–CV–17.

Court of Appeals of Indiana,
First District.

Sept. 25, 1986.

Rehearing Denied Nov. 21, 1986.

Kenneth E. Handmaker, Middleton & Reutlinger, Louisville, Ky., Phillip A. Terry, McHale, Cook & Welch, Indianapolis, for petitioner-appellant.

Linley E. Pearson, Atty. Gen., Frank A. Baldwin, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for respondent-appellee.

NEAL, Judge.

### STATEMENT OF THE CASE

Petitioner-appellant, Taylor Drug Stores, Inc. (Taylor), appeals the decision of the Indiana Alcoholic Beverage Commission (Commission), which refused Taylor's permit seeking a license to sell alcoholic beverages at its drug store in New Albany, Indiana.

We affirm.

### STATEMENT OF THE FACTS

On May 24, 1983, Taylor filed an application with the Commission seeking a "Type 208 drug store permit" to enable Taylor to sell alcoholic beverages in its New Albany store. A hearing was set before the local alcoholic beverage board, and Taylor's application was advertised, which notified the public of the scheduled hearing date of July 5, 1983. The main issue to be decided by the local board was whether Taylor's store's premises was situated within 200 feet from a church. IND.CODE 7.1-3-21-11. The hearing was continued until August 2, 1983.

On July 18, 1983, Excise Police Officer Graves visited the area and made a measurement, from a point on the outside wall of the church building enclosing a kitchen area, in a straight line to the nearest point on the back concrete wall of the Taylor store, i.e., building to building. The straight-line measurement went through a chain-link fence and measured 185 feet. At the same time, Officer Graves informed the church's minister of the pending hearing, and the minister and 12 church members were the only remonstrators at the August 2 hearing protesting the application.

At the August 2 hearing, the local board voted 3-1 to deny the application. The sole dissenter did not consider the 200-foot statutory requirement. Officer Graves stated he always votes last and with the majority of the other members of the local board, and voted to deny the application, especially since the local board had voted to deny the application in the past. He also stated that participation of a church at a

hearing "always has an impact on" the vote.

On August 22, 1983, the Commission sent a letter to Taylor denying its application. Taylor then initiated an appeal before the Commission, and on December 7, 1983, a hearing was held. By order dated February 15, 1984, the Commission denied Taylor's application. Taylor subsequently appealed to the trial court, which granted the Commission's motion for summary judgment to deny Taylor's application.

### ISSUES

I. Whether the determination that Taylor's proposed premises is within 200 feet of a church is supported by substantial probative evidence and in accordance with the law.

II. Whether there was any unlawful delegation of legislative power by the Commission to the local board.

III. Whether the denial of the permit below was based on the veto power of a religious organization in contravention to the First Amendment.

IV. Whether the conduct of the hearing officer denied Taylor a fair hearing.

### DISCUSSION AND DECISION

*ISSUE I: Measurement*

In our review of an administrative agency decision, we may not reweigh the evidence or substitute our opinion for that of the board; rather, we must give deference to the expertise of the board. *Indiana State Board of Registration of Architects v. Meier* (1986), Ind.App., 489 N.E.2d 966; *Mugg v. Stanton* (1983), Ind.App., 454 N.E.2d 867; *Clarkson v. Department of Insurance* (1981), Ind.App., 425 N.E.2d 203, *trans. denied.* We are limited to a determination of whether the board possessed jurisdiction over the matter and acted in accordance with proper legal procedures. If so, we will affirm the decision if it is based upon substantial evidence, and it did not violate any constitutional, statutory, or legal principle. *Meier, supra;*

*Mugg, supra; Clarkson, supra.* It was Taylor's burden to prove that the administrative order was arbitrary and capricious or an abuse of discretion. *Mugg, supra; Clarkson, supra.*

The issue to be decided here is the appropriate manner to measure the proximity between a church and a premises seeking a permit to distribute alcoholic beverages. IND.CODE 7.1-3-21-11 provides: "The commission shall not issue a permit for premises situated within two hundred (200) feet from a school or church if no permit has been issued for the premises under the provisions of Acts 1933, Chapter 80." (Footnote omitted.) The State contends the local board and the Commission appropriately used a straight-line measurement from the nearest point of the proposed premises (i.e. the building wall) to the nearest point of the church. Taylor argues that the measurement should be based on pedestrian travel, from doorway to doorway. Alternatively, Taylor argues the straight-line method used in this case erred in three ways. First, the measurement started from a kitchen rather than the church sanctuary; second, the measurement ignores barriers between Taylor's store and the church, namely a six-foot high chain-link fence and a concrete wall; and third, the measurement ends at Taylor's store's outer concrete wall rather than the area within the Taylor store premises where alcoholic beverages would be sold.

In construing the above statute, we are guided by fundamental principles of statutory construction. Statutes should be read to give effect to the intent of the legislature. *Barr v. Sun Exploration Co.* (1982), Ind.App., 436 N.E.2d 821. The legislature stated the general purposes of Title 7.1 are to protect the economic welfare, health, peace and morals of the people and to regulate and limit the manufacture, sale, possession and use of alcohol and alcoholic beverages. IND.CODE 7.1-1-1-1(a), (b). To accomplish these purposes, the legislature has also mandated that the provisions of Title 7.1 be liberally construed. IND. CODE 7.1-1-2-1. We further construe the

words within a statute according to their plain and ordinary meaning. *Kimble Division of Owens-Illinois, Inc. v. Busz* (1983), Ind.App., 449 N.E.2d 618, *trans. denied; Barr, supra; Field v. Area Plan Commission of Grant County, Indiana* (1981), Ind.App., 421 N.E.2d 1132. We will not presume the legislature intended its enactments to be applied in an illogical or absurd manner. *Field, supra.*

This brings us to the closer questions presented by Taylor, being the appropriate terminal points in measuring the distance between a "church" and a "premises" seeking a permit. IND.CODE 7.1–3–21–11 does not entirely specify how the terminal points of these two terms are to be measured, nor has the Commission promulgated any rule or regulation pursuant to IND.CODE 4–22–2 or 7.1–2–3–6 or –7 to clarify measurement procedure. The Commission is also empowered to prescribe the procedure to be observed by the local board for investigations, IND.CODE 7.1–2–3–21,[1] and the only guidelines provided by the Commission to the local board in this case is an Inter-Department Memo directed to Local Board Members dated February 8, 1983, on the subject of the "200 Foot Rule." In analyzing IND.CODE 7.1–3–21–10, –11 and 1961 Op.Ind. Att'y Gen. No. 54, the Commission stated:

"The different commissions have varied somewhat on their views as to how this two hundred (200) feet should be measured.

An Indiana Attorney General's Opinion, issued in 1961, indicated that the Legislature intended that any 'church' as used in the above restrictions, was meant to embrace a whole or a part of a building, or place which was regularly used for public religious worship; that such an institution should probably have had some recognizable form of organization and held, in addition to religious and other necessarily concomitant activities and purposes, stated meetings for church services, and that such an institution should have been intended for all such purposes.

The present commission feels, in view of the above designation of a 'church' that the proper measurement of the two hundred (200) feet from a church to a permit premises, would logically be from the building housing the church where the public religious worship services take place, to the building, or that portion of a building designated as the 'permit premises.' It would be within the discretion of the local board and the commission to determine exactly how such distances should be measured, depending upon the circumstances in each case.

\* \* \* \* \* \*

To assist local boards and the commission in making its final determination of such measurements, the designated representative to the local board from the commission should prepare a rough sketch of the two properties, showing the relative position of the grounds, buildings, intervening buildings and streets, doorways in each of the buildings and various measurements in straight lines between such points."

This memo indicates measurement from a church may begin from the part of the building regularly used for public religious worship. Officer Graves admittedly did not look inside the building structure before taking the measurement, but Taylor maintains the measurement started from a kitchen area of the building and not the church sanctuary. No measurement was taken from the church sanctuary area. The last paragraph of the memo above also refers to "intervening buildings and streets" and "doorways in each of the buildings"; all other measurements taken by Taylor which accounted for these factors went well beyond 200 feet.

The memo also indicates measurement is to be taken "to the building, or that portion of a building designated as the 'permit

---

**1.** We are not called upon to decide whether this code section allows the commission to prescribe procedure via a memo, as here, or whether it requires formal promulgation of a rule or regulation.

premises.'" Taylor's store occupies a building adjoining several others located along an outdoor mall in a shopping center. The language in the memo referring to "that portion of the building" could refer to either, that portion of the mall building in which the Taylor store occupies, or, as Taylor argues, that portion within the building it occupies cordoned off for the sale of alcoholic beverages.

Taylor's argument here is based on the following analysis. A "licensed premises" defined in IND.CODE 7.1–1–3–20 means "a building, or part of a building, in which alcoholic beverages are authorized by a permit to be kept, manufactured, or sold." In applying for a permit, Taylor must satisfy the "character of business" test under IND.CODE 7.1–3–1–19, which requires that a substantial portion of its drugstore business must continue as its main business function. It also had to submit to the Commission a Schedule FP accompanying its application, showing floor plan dimensions and identification of the alcoholic beverage display area. We note that these floor plans must be approved by the commission before the permit may be granted, 905 I.A.C. 1–29–4 (1984), and "[a]ny change in the floor plans of the licensed premises of any retail permittee made after the date of the adoption of 905 I.A.C. 1–29 [August 9, 1983] shall require the prior approval of the commission...." It was stipulated that had the measurement extended to the proposed premises within the drugstore where alcoholic beverages were to be displayed and sold, instead of the store's back wall, the measurement would have been beyond 200 feet.

■ In interpreting the appropriate means of measurement, we are guided by the terms within the statute. A statute may specify the precise terminal points to be used in a measurement, but in the absence of an express provision, the general rule is that measurement should be along the shortest straight line connecting a church and the proposed premises, regardless of intervening obstacles. *See* 45 AM. JUR.2d *Intoxicating Liquors* sec. 144 (1969); 4 A.L.R.3d 1250 (1965). Taylor's initial argument, that the measurement should be based on a line of pedestrian travel from doorway to doorway, strains our reading of the plain and ordinary meaning of the statute. Nowhere does the statute state that the proposed premises must not be situated within a "walking" distance of 200 feet from a church "doorway". For us to construe the statute in such a manner would be illogical and borders on the absurd. The statute, as written, gives a "church" a 200 foot radius as a protective zone from disruption associated with a "premises" seeking a permit to dispense alcoholic beverages.

■ As for the precise terminal measuring points from a "church" to a "premise," we hold the points of measurement used in the case at bar were correct. We note that in other areas of the law, our court in the past has given a broad interpretation of the nature of a "church." *See Board of Zoning Appeals v. Wheaton* (1948), 118 Ind. App. 38, 76 N.E.2d 597; *Keeling v. Board of Zoning Appeals* (1946), 117 Ind.App. 314, 69 N.E.2d 613, *trans. denied.* The plain and ordinary meaning of the word "church" includes the building regularly used for religious worship, along with appurtenances, rooms, and facilities which pertain to the administration of that worship which are under one roof and constitute a part of that building.[2] The kitchen area in question in the case at bar appar-

---

2. This definition is not meant to be exclusive or confined to a building structure. IND.CODE 7.1–3–21–11 itself does not require measurement to be taken from a school or church "building." We need not decide the definition of a "school" for purposes of this opinion, but we note that a school's educational needs often extend beyond its building structure to portions of the land, for physical education or sports complexes, on which it is situated. Likewise, a "church" has been described not only as a building used for worship, but also to any "body of Christians." *Wheaton, supra* at 46, 76 N.E.2d at 601. Therefore, proper regular functioning of a church could also, under appropriate circumstances, extend beyond its building structure. Based on the facts before us on review, we need only hold that the administrative decision here was not an abuse of discretion.

ently was appurtenant to and a part of the overall church building structure, and we cannot say that a kitchen would not function as a necessary part of the administration of church worship.

■ Taylor's interpretation of the proposed "premises" must also fail. Taylor relies on the definition of a "licensed premises" in IND.CODE 7.1-1-3-20 which means a "building, or part of a building...." The plain meaning of these terms does not extend to a portion within a part of a building.

Taylor's own situation provides a good example of the meaning of these terms. Taylor's store is located within an outdoor mall of a shopping center, which mall can properly be viewed as constituting the entire building. Taylor's store occupies or leases a part of that mall building. In other words, the mall building is comprised of separate but adjoining parts, each considered a part of the mall building. Measurement was properly taken to that part of the building in which Taylor's store occupies. Taylor even suggests that the purpose of cordoning off a portion of the premises is "[b]ecause at times when sales cannot be made, that portion of the premises must be locked to prevent the public from entering therein without having to close the entire store."

## ISSUE II: Delegation of Authority

Taylor's argument here is essentially divided into three interrelated parts. First, it argues that because of the lack of legislative or administrative guidelines to uniformly interpret the "200-foot rule," IND. CODE 7.1-3-21-11 is unconstitutionally vague, and the Commission's February 8, 1983 memo, giving the local boards the discretion to determine the appropriate form of measurement was an unlawful delegation of discretionary power to the local boards. Second, it argues that by deferring to the judgment and discretionary interpretations of the various local boards regarding the appropriate form of measurement, IND.CODE 7.1-3-21-11, as a general law, is not receiving uniform operation throughout the state, in violation of

Ind. CONST. art. IV, sec. 23. Third, it argues IND.CODE 7.1-3-19-11 represents an unlawful delegation of legislative and judicial power to the local boards since, whenever a local board by majority vote recommends to deny a permit, the Commission is without power or discretion to exercise its independent judgment but must defer to the decision of the local board.

■ Underlying each of Taylor's arguments is the statutory framework delegating various responsibilities to the Commission and the local boards, and the effect of the Commission's memo dated February 8, 1983. The Commission does have the power to promulgate various rules and regulations. *See* IND.CODE 4-22-2 and 7.1-2-3-6, -7. While it may have been preferable had the Commission (or more appropriately, the legislature) clarified the "200-foot rule" through a formal rule, it was under no prior duty to promulgate a clarifying rule or regulation when confronted with broad legislative language. Further, there is no evidence in the record that the memo was ever properly promulgated as a rule or regulation under IND.CODE 7.1-2-3-6 and IND.CODE 4-22-2-2. Therefore, the Commission memo dated February 8, 1983, is without the force and effect of law. *Beer Distributor of Indiana, Inc. v. State ex rel. Alcoholic Beverage Commission* (1982), Ind.App., 431 N.E.2d 836, *trans. denied.* Therefore, the memo itself is void as regards any alleged attempt by the Commission to unlawfully delegate its responsibility.

■ Taylor has not presented to us in any of its arguments that the Commission has in any way abdicated its responsibility. The relationship between the powers of the legislature and an administrative body was succinctly stated in *State ex rel. Standard Oil Co. v. Review Board of Indiana Employment Security Division* (1951), 230 Ind. 1, 7-8, 101 N.E.2d 60, 63:

"The rule of action which must govern in controversies between adversary parties must be laid down by the legislature itself. It cannot be left to the discretion

of administrative agencies. While a law as enacted must be complete, where the legislature has laid down a standard which is as definitely described as is reasonably practicable, it may authorize an administrative agency to amplify or implement that legislation, within prescribed limits, by adopting rules and regulations of general application to all alike, and it may authorize an administrative agency to determine whether facts or circumstances exist upon which the law makes or intends to make its own action depend, but it cannot confer upon any body or person the power to determine what the law shall be. As has been said, there is a clear distinction between the delegation of power to make a law, which necessarily involves a discretion as to what the law shall be, and conferring an authority or discretion as to its execution, to be exercised under and in the pursuance of the law." (Citations omitted.)

Contrary to the statute in the above case, which was invalidated, IND.CODE 7.1–3–21–11 meets the above standards.

Our legislature enacted IND.CODE 7.1–3–21–11, which governs this controversy. The provision is complete and prescribes a definite, described standard. Its provisions are mandatory, and it does not confer any authority upon the administrative agency to determine what the law shall be. What is conferred upon the Commission is the authority and discretion in executing, enforcing and administering the laws under Title 7.1. On two occasions the Commission reviewed Taylor's application and determined it was not in accordance with the law. As we held above, IND.CODE 7.1–3–21–11 is capable of being administered according to its plain and ordinary meaning, which is precisely what the Commission did in this case.

■ Nor are we persuaded that Ind. CONST. art. IV, sec. 23 has in any way been violated. Under this constitutional provision, the operation of IND.CODE 7.1–3–21–11 must be the same throughout the state under like circumstances to be valid, but the operation of this statute need not be uniform in achieving the same result in all respects. See State ex rel. Todd v. Hatcher (1973), 158 Ind.App. 144, 301 N.E.2d 766, trans. denied. The provisions of IND. CODE 7.1–3–21–11 are mandatory and apply to any applicant seeking a permit within 200 feet from a church or school throughout the state.

■ Finally, IND.CODE 7.1–3–19–11 does not represent an unlawful delegation of legislative or judicial power to the local boards. Normally, the Commission has absolute discretion in issuing, suspending or revoking a permit under IND.CODE 7.1–3–19–1 unless as otherwise provided in Title 7.1. The legislature has otherwise provided in IND.CODE 7.1–3–19–11, which mandates that the Commission shall deny an application for a permit when a majority of the members of the local board recommend that the permit not be granted. The legislature conferred this power upon the local boards, not the Commission, and the local board was also bound to administer its duties according to the law. We also note that this legislative scheme was given tacit approval by our supreme court in Indiana Alcoholic Beverage Commission v. State ex rel. Harmon (1978), 269 Ind. 48, 379 N.E.2d 140. We find no error in the way the local board and the Commission administered their duties under the law.

In support of its arguments, Taylor relies primarily on three analogous cases. Indiana Alcoholic Beverage Commission v. Osco Drug, Inc. (1982), Ind.App., 431 N.E.2d 823; Indiana University v. Hartwell (1977), 174 Ind.App. 325, 367 N.E.2d 1090, trans. denied; Schakel v. Review Board of Indiana Employment Security Division (1968), 142 Ind.App. 475, 235 N.E.2d 497, trans. denied. However, the holdings of these cases do not contravene our above analysis regarding the delegation of authority and constitutionality of the provisions in question. The legislature made the laws and delegated authority to execute the law. IND.CODE 7.1–3–21–11 is mandatory and provides a definite legal standard. The Commission did not promul-

gate any rule or regulation in which it unlawfully delegated its statutory authority, nor did the Commission abdicate its responsibility in administering the law.

*ISSUES III AND IV: First Amendment/Fair Hearing*

Taylor's arguments here are actually an extension of its prior arguments. First, Taylor claims that the unconstitutionality of IND.CODE 7.1–3–21–11 lies not in its language but in its implementation, since the local board allegedly denied its application because of opposition from a church. Second, Taylor claims it was denied due process from an impartial decision maker because Officer Graves personally notified the reverend of the church in question that Taylor's application was to be considered in an upcoming public hearing.

 In considering the propriety of statutes similar to IND.CODE 7.1–3–21–11, the United States Supreme Court in *Larkin v. Grendel's Den, Inc.* (1982), 459 U.S. 116, 123–24, 103 S.Ct. 505, 510, 74 L.Ed.2d 297, stated that valid secular objectives in implementing liquor license laws can be readily accomplished "either through an absolute legislative ban on liquor outlets within reasonable prescribed distances from churches, schools, hospitals, and like institutions, or by ensuring a hearing for the views of affected institutions at licensing proceedings where, without question, such views would be entitled to substantial weight." (Footnotes omitted.) The provisions in IND.CODE 7.1–1–1–1(a) and 7.1–3–21–11 promote valid secular objectives. *See Larkin, supra.* IND.CODE 7.1–3–21–11 is mandatory, it is an absolute legislative ban on liquor outlets within 200 feet, (a reasonably prescribed distance) from a church. In the event that the distance in question is beyond 200 feet, a hearing is available for the views of affected institutions at licensing proceedings, where such views would be entitled to great weight. Neither the statute nor the proceedings before the local board or the Commission delegate a governmental power to a religious institution which would implicate the First Amendment. *See Larkin, supra.*

Officer Graves testified that the protestations of a church always have an impact on the decision to grant or deny a petition, and that he personally notified the reverend of the church in question of the pending hearing. We do not condone these statements and activities. Nevertheless, it is beyond dispute that Taylor's store premises is situated within 200 feet of a church, based on a method of measurement we hold to be proper according to the law. Therefore, any further consideration of protests by church members are irrelevant. Once this factual determination is made, the matter becomes a question of law.

Any claim that Taylor was denied due process from an impartial decision maker is also without merit. There was no room for discretion. There is no evidence which suggests that the church in any way influenced a board member to make an erroneous factual measurement. Once it was correctly determined that the Taylor store premises was within 200 feet of a church, its application was required to be denied as a matter of law.

Judgment affirmed.

ROBERTSON, P.J., and RATLIFF, J., concur.