[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case involves a claim for personal injury arising from plaintiff's death on August 10, 1987, in a motor vehicle accident, when a motor vehicle operated by her collided with a tractor-trailer operated by Stephen Garnett which was editing on CT Page 9450 to Route 5 in South Windsor, from a driveway on property of Mahr Freight Lines after the tractor, owned by Rem Transport had picked up a trailer owned by International Transport, Inc., from adjacent property owned by International Transport.
Following a trial by jury and the rendering of a verdict on July 9, 1992, this court held a hearing on August 13 to review evidence and hear arguments for the reduction of damages awarded to the decedent's estate by the total amount paid to it from all collateral sources available to him pursuant to Section 4 of Public Act 86-338. All parties agree that the trial and this hearing were governed by the provisions of this act, sometimes referred to as Tort Reform I, particularly those sections codified into General Statutes 52-225d, 52-572h and 52-225a. These sections became effective on October 1, 1986 and remained in effect until October 1, 1987 when Public Act No. 82-227, sometimes referred to as Tort Reform II, became effective. All references to statutory sections in this decision are to sections of Public Act No. 86-338, unless otherwise specified.
The verdict as returned by the jury found economic damages of $1,000,000 and non-economic damages of $500,000 (the breakdown into past and future damages having been waived by counsel). The verdict found the following percentages of negligence attributable to each of the following:
Plaintiff 25%
Defendant, International Transport, Inc. 35%
Garnett and REM Transport 30%
Mahr Freight Lines 10%
Total 100%
The only defendant in the case as tried was International Transport, Inc. ("ITI"). Garnett and REM Transport, treated as one person, was an original defendant but was permitted to withdraw, having paid $825,000 to the plaintiff in order to be released. Mahr Freight Lines was never a defendant but was included on the verdict form without objection, as a person "whose negligent actions were a proximate cause of the damages" under Section 3 of P.A. 86-338.
CT Page 9451 I
At the August 13 hearing, plaintiff claimed the Collateral Source Rule set forth in Section 4 was unconstitutional and should be disregarded by this court on the ground that it was vague and contradictory and it was impossible for the court to make the calculation required under that section.
We reject this claim. It is true that the various sections of Public Act 86-38 pose difficulties in terms of reconciliation, and that the entire statutory scheme was revised within the year. However, we are not persuaded that any constitutional infirmity has been proven. The various nuances of legislative intent that can be garnered from the legislative history can be interpreted as an effort to discourage piece-meal settlements and an attempt to make certain that a plaintiff not receive compensation more than once for any element of his damages. We are not prepared to rule that this statute is so vague and contradictory or so defies rational calculation as to make the collateral source rule unconstitutional. We do not minimize the difficulty of applying this statute to the instant case, but are required to make every effort to interpret a legislative enactment as constitutional. Bottone v. Westport,209 Conn. 652, 657 (1989).
 II.
Aside from plaintiff's claim of unconstitutionality, the parties have not challenged the proposition that the $825,000 settlement paid by Garnett-Rem Transport qualifies as a "collateral source" within the meaning of Section 4. We note that Judge McGrath has ruled that a settlement in a companion case entitled a defendant to a collateral source credit in a case arising from the same incident. Aquino v. Peters, Executor, Conn. Superior court at Fairfield, No. CV88-0252272, January 31, 1992. Plaintiff claims, however, that if the $825,000 settlement is to be applied under this section as an offset to the award against ITI, it should be reduced not only by the amount attributable to the decedent's negligence, but also, by the litigation costs and attorneys fees expended by plaintiff to secure such settlement as an "amount which has been paid . . . by . . . the claimant . . . to secure his right to any collateral source benefit . . . ."
We reject this claim. Unlike insurance or health care CT Page 9452 premiums which are paid to secure coverage, litigation costs are not a prerequisite to "secure" the cause of action resulting in the settlement. We do not interpret the language of Section 4 as either requiring or permitting litigation costs to be treated as a sum paid to secure the right to collateral source.
 III.
There remains a significant difference of opinion as to how to apply the collateral source reduction, the plaintiff urging that it be applied to the total award found by the jury i.e. $1,500,000; the defendant maintaining it should be applied only to the damages found by the jury against ITI, i.e. $550,000. After analyzing the arguments, we conclude that the most reasonable interpretation of the statute requires application of the collateral source reduction to the total award found by the jury.
The first sentence of Section 4 requires this court to reduce "such award" (emphasis supplied) by the total of collateral source payments. While it is true that the jury found the percentages of negligence attributable to each of the persons listed on the verdict form, the only actual "award" which it made consisted of the total economic and non-economic damages. Indeed, the only place in which the word "award" appears on the verdict form is in connection with the total damages found by the jury. Moreover, application of the collateral source deduction to the total award is consistent with the manner in which the contributory negligence of the plaintiff is required to be offset under sub-section (2) of this section. Finally, we note the only other place that "award" or "awards" is used in the entire public act is in Section 3(b) requiring certain explanations to the jury of "the effect on awards (emphasis supplied) where we regard the meaning in that context to be clear as applying to the total award.
Accordingly, we find that the net damages payable by ITI to the plaintiff, after reduction of the collateral source payments, to be $315,000, computed as follows:
Jury Verdict
 Economic Damages $1,000,000 Non-economic Damages 500,000 Total Award $1,500,000
CT Page 9453
 Reduction by reason of plaintiff's contributory negligence (3(b)) 25% of $1,500,000 ($375,000
 Reduction by collateral source settlement of $825,000, reduced by value of plaintiffs recoverable damages attributable to its percentage of negligence (4(2)) 25% of $1,500,000 or $375,000 — or net collateral source reduction of ($450,000) Net recoverable damages $675,000
 Proportional share for which ITI is liable (3(d)) 35%/75% multiplied by $675,000 . . . . $315,000
Wagner, J.