[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs Louis J. D'Amato and John C. D'Amato and Richard M. Christopher and Keith Russo, partners (plaintiffs) have brought this action seeking a declaratory judgment against the Water Pollution Control Authority (WPCA) of the Town of CT Page 1431-CCCC Orange requesting the court to find § 7-246(b) of the Connecticut General Statutes unconstitutional and that a mandatory injunction issue ordering the WPCA to designate the plaintiffs' property as a site for a Community Sewerage System not owned by a municipality. The Commissioner of Environmental Protection of the State of Connecticut has been granted permission to intervene as a defendant.
The plaintiffs have acquired a parcel of land in the Town of Orange which they wish to develop for residential use. They are asking to have the WPCA designate the subject property as an area to be served by a proposed community sewage system not owned by the municipality. The WPCA has denied the plaintiffs' request thereby resulting in the bringing of the instant action.
Section 7-246(b) of the Connecticut General Statutes reads as follows:
 "Each municipal water pollution control authority designated in accordance with this section may prepare and periodically update a water pollution control plan for the municipality. Such plan shall designate and delineate the boundary of: (1)Areas served by any municipal sewerage system; (2) areas where municipal sewerage facilities are planned and the schedule of design and construction anticipated or proposed; (3) areas where sewers are to be avoided; (4) areas served by any community sewerage system not owned by municipality and; (5) areas to be served by any proposed community sewerage system not owned by a municipality. Such plan shall also describe the means by which municipal programs are being carried out to avoid community pollution problems. The authority shall file a copy of the plan and any periodic updates of such plan with the Commissioner of environmental protection and shall manage or ensure the effective management of any community sewerage system not owned by a municipality."
Section 7-425 of the Connecticut General Statutes defines a community sewerage system as follows:
 "Community sewerage system means any sewerage system serving one or more residences in separate structures which is not connected to a municipal sewerage system CT Page 1431-DDDD or which is connected to a municipal sewerage system as a distinct and separately managed district or segment of such system, . . . .
The plaintiffs all of whom are experienced developers purchased the subject property outright, free and clear of any contingencies. The land in question is hilly with poor soil conditions. It is the intention of the plaintiffs to construct a community sewerage system not owned by the municipality. The property is located in a sewer avoidance area, i.e., an area wherein the town did not plan for the installation of an off site sewer system but would depend rather on an inground septic system. The evidence disclosed that the land would accept septic systems but not at the density desired by the plaintiff.
Upon the receipt of a letter from plaintiffs' counsel seeking to have the site designated as such a Community Sewerage system, the WPCA gave both sides an opportunity to be heard. After a hearing was held and both sides given an opportunity to present their respective views the Board denied plaintiffs' request pursuant to § 7-246(b) of the Connecticut General Statutes.
Thereupon the plaintiffs brought this action seeking to have § 7-246(b) declared unconstitutional and that a mandatory injunction issue. As the basis for their claim the plaintiffs allege that § 7-246(b); "fails to contain adequate and definite guidance for the defendant to pass on an application for such designation as was sought by the plaintiffs and fails to include standards which the defendant was to apply in connection with plaintiff's application". (See paragraph 5, plaintiffs' second amended complaint). They further allege in their complaint that: "the legislature in failing to provide reasonable adequate and definite guidance for the defendant to act on plaintiff's application has made an unconstitutional delegation of its legislative power in violation of Article Third Sec. 1 and Article First Sec. 10 of the Constitution of the State of Connecticut (Paragraph 6, plaintiffs' second amended complaint).
In ruling upon the constitutionality of a legislative act, the court must make every presumption and intendment in favor of its validity . . . . This strong presumption of validity is particularly applicable tp [to] police power legislation . . . . The party challenging a statute's constitutionality has a heavy burden of proof; the unconstitutionality must be proven beyond a reasonable CT Page 1431-EEEE doubt. Bottone v. Westport, 209 Conn. 652, 657 (internal citations omitted.)
"To prove that a statute is unconstitutionally vague, the challenging party must establish that an ordinary person is not able to know what conduct is permitted and prohibited under the statute" Bottone v. Westport, supra, 658.
The passage of § 7-246(b) resulted from a legislative task force report. The creation of the task force came about because of a series of pollution abatement orders issued throughout the state during the 1960's. In the 1970's, the Federal Clear Water Act provided funding for the extensive construction of municipal treatment plants. What follows was an overbuilding of sewers and an explosive development for which most communities were unprepared. This led to a desire to avoid construction of sanitary sewers where not necessary. The purpose of the task force was to develop a sewer avoidance report. The report was to be a planning tool for Connecticut municipalities and, for sewer planning to be the result of input from all the various agencies of the municipality such as planning and zoning boards, economic development commissions, health departments, etc., as well as Water Pollution Control boards. Their report led to the enactment of § 7-246(b) allowing each community to determine what areas would be served by a municipal sewerage system and areas where such a system was planned for with its schedule of design; areas where sewers were to be avoided and finally; areas served or to be served by a community sewerage system not owned by the municipality.
Section 7-246(b) is permissive in nature. There is nothing mandatory in the statute. Many communities in the state have no sewerage system and are served with septic systems throughout. Except for the larger cities, most towns have areas where sewers are to be avoided. However, if a facilities plan were to be adopted, it is required that a copy of such plan and any update of the same be filed with the Department of Environmental Protection.
Subsequent to the enactment of § 7-246(b) the evidence disclosed that the Town of Orange worked with the DEP to create a Facility Plan. The plan was developed in cooperation with the Planning and Zoning Boards, the WPCA, and various other boards and commissions. This resulted in a long-term plan that delineated where sewers were to be and where sewers were to be CT Page 1431-FFFF avoided. The sewer planning for the Town has been undertaken in a manner consistent with zoning as well as health and welfare factors. The zoning layout shows the industrial, commercial and multi-family areas laid out along and below the Boston Post Road. The residential area is generally north of the Boston Post Road. Consideration has been given to soil types, highway layout and sound acceptable planning standards. The Comprehensive Plan of Development and the Facility Plan for the Town of Orange show that a sewerage system is to be constructed and maintained in the area designated as commercial, industrial and multi-family on and south of the Boston Post Road, while in the living area north of the Boston Post Road, sewers are to be avoided. In this living area, land is to be developed in accordance with its capacity to accept waste water and the availability of a proper highway layout. These decisions were made at the urging of the State DEP and are reflected in the Facility Plan and the Town Plan of Development for the Town of Orange.
The plaintiffs and their experts acknowledge that the WPCA could have either denied or approved the plaintiffs request for a designation of the site for a community sewerage system. Had they examined the Town Plan of Development, they would have made themselves aware of those areas where sewers were to be avoided. Plaintiffs' expert acknowledges that the site would accept septic systems, but at a much lesser density than the plaintiffs' desire.
In arriving at their decision, the evidence shows that the WPCA considered the history of package treatment plants for which the Town would be ultimately responsible. This history taking into consideration their use, not only in the State of Connecticut but also in the surrounding states, showed that at the very best they were fraught with problems, both in the nature of their design and in the experience of their management. The State of Connecticut, by the testimony of DEP officials, showed that they tend to discourage such package treatment plants.
Both the plaintiffs and the WPCA rest their positions on the decision by Justice Healy in Bottone v. Westport, supra. In his opinion, Justice Healy reviewed the history of the delegation of powers by the legislative department. He explored extensively the separation of powers doctrine. In doing so he ruled for the majority that while State v. Stoddard, 126 Conn. 623, was the ruling authority for several decades and while it held that such a delegation of power could not be accomplished without CT Page 1431-GGGG sufficient guidelines or standards set forth in the delegation, he found that while the rule applies in a delegation of power from the legislative to the executive department, it did not apply to a delegation from the legislative department to a municipality.
He concluded that: "the rule limiting the delegation of legislative power between co-equal branches of state government is not the appropriate rule to govern the delegation of legislative power from the state to a municipality. The underpinning of the rule governing the former delegation, i.e., separation of power is not applicable to the latter delegation. Instead, due process provides the sounder standard to govern the delegation of legislative authority to a municipality. Specifically, the standard is whether the "`statute afford[s] a person of ordinary intelligence a reasonable opportunity to know what is permitted or prohibited"'. Seals v. Hickey, supra, 343;McKinney v. Coventry, supra 618. Such a rule protects the municipality's enforcement of the state statute." Bottone v.Westport, supra 665-66.
Delegations by a state to a local authority acknowledges the nature and respective resources of state and local governments. It would not be realistic to assume that the state legislature could address all of the local concerns in the state. It is clear however that the municipality cannot legislate to address local concerns until it is authorized to do so by the state. In providing local governments with authority to legislate, the state necessarily must grant municipalities the power to act with broad discretion within the framework of the delegated authority. The state legislature may give a municipality the power to "fill in the details" of police power legislation that addresses particularized local concerns. Bottone, 669-670, (internal citations omitted).
Justice Healy summarized the issue by stating, "the proper standards for a delegation of power from the state legislature to a municipality based on both constitutional analysis and the reality of state and local governmental relations, is that such a delegation should be judged by whether it provides reasonable notice of what conduct may be authorized or prohibited under its provisions." Bottone v. Westport, supra 675.
It is clear from this that applying the rule to 7-246(b) what the delegation consists of is obvious from its language. CT Page 1431-HHHH Section 7-246(b) grants to the WPCA and the Town of Orange the authority to determine where sewers are to be and where they are not to be. The adoption of the facility plan was made only after giving serious consideration to the Town Plan of Development. It allows the plaintiffs to know where sewers were to be installed and where sewers were to be avoided.
A sufficient opportunity was given for them to present their case before the WPCA. Furthermore, they could have availed themselves of the opportunity to go before the Town Planning Board requesting an amendment be made to the Town Plan and if they felt it necessary take an appeal from any ruling that they might not have agreed with.
The request for a Declaratory Judgment declaring § 7-246(b) of the Connecticut General Statutes to be unconstitutional and that a mandatory injunction ordering the WPCA to designate plaintiffs' property as a site for a Community Sewerage System not owned by the municipality is denied.
Judgment may enter for the defendants.
THE COURT
CURRAN, J. S.T.R.